UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBIN TOLSMA, AS ADMINISTRATOR OF THE
ESTATE OF DARREN TOLSMA, DECEASED,

Plaintiff,

v.

COLGAN AIR, INC.,
BOMBARDIER AEROSPACE CORPORATION,
PINNACLE AIRLINES CORP.
CONTINENTAL AIRLINES, INC.,

Defendants.

Civil No.:

JURY TRIAL
DEMANDED

---

## COMPLAINT

Plaintiff, Robin Tolsma, as Administrator of the Estate of Darren Tolsma

("Estate"), by her attorneys, Hodgson Russ LLP, for her Complaint, alleges:

### PARTIES

1.      Robin Tolsma is a citizen of the State of New York, and is the appointed

representative of the Estate of Darren Tolsma, deceased. Robin Tolsma was issued Letters of

Administration by the Erie County (N.Y.) Surrogate's Court on March 13, 2009.

2.      Robin Tolsma brings this action as Administrator and personal

representative of the Estate of Darren Tolsma, and on behalf of each beneficiary, survivor and

heir of Darren Tolsma, including, without limitation, Darren Tolsma's wife, Robin, and his

children, Darren, Jr., and Nikki.

3.     Colgan Air, Inc. ("Colgan") is a corporation duly organized under the laws of Virginia, with its principal place of business in Manassas, Virginia. Upon information and belief, Colgan does business and transacts business in New York State, regularly does or solicits business in New York State and engages in a persistent course of conduct in New York State, derives substantial revenues from services rendered in New York State and expects or reasonably should expect its acts to have consequences in New York State, and derives substantial revenues from interstate commerce. Colgan operates under the name "Continental Connection."

4.     Bombardier Aerospace Corporation ("Bombardier") is a corporation duly organized under the laws of Texas, with its principal place of business in Quebec, Canada. Upon information and belief, Bombardier does business and transacts business in New York State, regularly does or solicits business in New York State and engages in a persistent course of conduct in New York State, derives substantial revenues from services rendered in New York State and expects or reasonably should expect its acts to have consequences in New York State, and derives substantial revenues from interstate and/or international commerce.

5.     Pinnacle Airlines, Corp. ("Pinnacle") is a corporation organized under the laws of Delaware, with its principal place of business in Memphis, Tennessee. Upon information and belief, Pinnacle does business and transacts business in New York State, regularly does or solicits business in New York State and engages in a persistent course of conduct in New York State, derives substantial revenues from services rendered in New York State and expects or reasonably should expect its acts to have consequences in New York State, and derives substantial revenues from interstate and/or international commerce.

- 2 -

6. Continental Airlines, Inc. ("Continental") is a corporation organized under the laws of Delaware, with its principal place of business in Houston, Texas. Upon information and belief, Continental does business and transacts business in New York State, regularly does or solicits business in New York State and engages in a persistent course of conduct in New York State, derives substantial revenues from services rendered in New York State and expects or reasonably should expect its acts to have consequences in New York State, and derives substantial revenues from interstate and/or international commerce.

## SUBJECT MATTER
## JURISDICTION AND VENUE

7. This is an action for the wrongful death of Darren Tolsma (N.Y. E.P.T.L. §§5-4.1 et seq.) and for the injuries he sustained prior to his death (N.Y. E.P.T.L. §11-3.2).

8. This court has subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. §1332 (a, c). The matter in controversy greatly exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

9. This court has supplemental jurisdiction over claims that form part of the same case or controversy. 28 U.S.C. §1367.

10. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and one or more defendants are subject to personal jurisdiction in this district at the time this action was commenced. 28 U.S.C. §1391(a)(2, 3).

- 3 -

## FACTS

11.     On February 12, 2009, Darren Tolsma was a paying passenger on
Continental Connection flight number 3407, from Newark, New Jersey, to Buffalo, New York
(the "Flight" or "Flight 3407").

12.     Colgan Flight 3407 (9L 3407 or CJC 3407) was operated by Colgan,
under a code sharing arrangement with Continental.  Flight 3407 was marketed as Continental
Flight 3407 (CO 3407) under the Continental Connection brand.  Colgan operated and operates
under the name "Continental Connection" pursuant to a contractual agreement with Continental.

13.     Flights, such as Flight 3407, that are code-shared between Continental and
Colgan, may be booked through Continental, or by clicking on the hyperlink "Business Partners:
Continental Connection" on the Colgan website.  These flights may also be booked on travel
websites, where the flights are displayed as "Continental Airlines" flights "operated by Colgan
Air dba Continental Connection."

14.     Upon information and belief, the pilots on Flight 3407 were employed by
Colgan.  The pilots were acting within the scope of their employment during the flight of Flight
3407.

15.     The aircraft utilized on Flight 3407 ("Aircraft") was a Bombardier Dash 8-
Q400,  registration number N200WQ, registered to Colgan.

16.     Upon information and belief, Pinnacle purchased the Aircraft from
Bombardier and transferred it to Colgan in April 2008.

- 4 -

17.     On February 12, 2009, the Aircraft was registered to Colgan.

18.     Upon information and belief, Pinnacle and Colgan jointly owned, maintained, scheduled, managed, supervised and/or operated Flight 3407. Pinnacle and Colgan had and continue to have a parent/subsidiary and/or principal/agent and/or alter ego relationship. Pinnacle is the parent, principal or alter ego of Colgan. Pinnacle uses Colgan to conduct business in the State of New York and throughout portions of the United States. As a result of the relationship between Pinnacle and Colgan, both are liable to Plaintiff for the crash of Flight 3407 and the resulting injury to and death of Darren Tolsma.

19.     On February 12, 2009, as Flight 3407 approached Buffalo at approximately 10:15 p.m., the pilots of the Flight lost control of the Aircraft, due to, among other things, a combination of improper control of the Aircraft in icing conditions, negligent actions and omissions of the pilots, and defective design of the Aircraft's systems, resulting in the Aircraft crashing in Clarence, New York, and the injury and death of all passengers aboard the Aircraft, including Darren Tolsma.

20.     In the period leading to the crash, the Aircraft pitched up approximately 31 degrees before pitching down at approximately 45 degrees. The Aircraft also rolled left approximately 46 degrees before rolling into a partially inverted position at approximately 105 degrees right. These violent and abnormal oscillations resulted in the passengers — including Darren Tolsma — being subjected to unusual g-forces and sustaining physical bodily injuries, pain and suffering, mental anguish, emotional distress, and other damages.

21.    The crash of the Aircraft resulted in further damages and injury to Darren Tolsma, and directly and proximately caused his death.

22.    As a direct and proximate result of defendants' conduct, there was a significant measurable period of time before the crash, as well as before and after the first trauma causing injury to Darren Tolsma and/or the time Darren Tolsma was first injured before his death, when Darren Tolsma consciously suffered pre-crash terror and physical pain and suffering.  Upon information and belief, Darren Tolsma also suffered post-crash terror and physical pain and suffering, mental anguish, emotional distress, severe injuries, and damages for a measurable period before his death.

23.    Prior to and on February 12, 2009, Colgan, Pinnacle, and Continental were commercial common carriers, engaged in the business of carrying passengers for hire in interstate commerce, in that each regularly operated scheduled passenger flights and maintained, inspected, serviced, scheduled, leased, and/or purchased aircraft, including the Aircraft that was flown on Flight 3407.

24.    Prior to and on February 12, 2009, upon information and belief, defendants Colgan, Pinnacle, and Continental owned, controlled, inspected, serviced, maintained, repaired, scheduled, trained pilots and flight crew, monitored, loaded and operated the Aircraft and its component parts and systems, including, but not limited to, the Aircraft's de-icing system, flight control systems, stabilizing system, electrical system, and flight instrumentation system, and, with defendant Bombardier, wrote and/or approved instructions and warnings for the aircraft and its component parts and systems, including, but not limited to, a flight manual, maintenance manual, aircraft operating manual, pilot operating handbook,

- 6 -

inspection instructions, maintenance instructions, loading instructions, service bulletins, and inspection schedules.

25.     At all relevant times, the Aircraft was owned and/or operated, maintained, controlled, loaded, manned, scheduled, dispatched, flight followed, inspected, repaired, serviced and monitored by defendants, acting by and through their authorized agents, servants, officers, employees and/or designees.

26.     Defendant Bombardier designed, manufactured, assembled, inspected, tested, distributed, serviced, maintained, monitored, repaired, marketed, and/or introduced into the stream of commerce, and its component parts, including but not limited to, the Aircraft's de-icing system, flight control systems, stabilizer system, electrical system, and flight instrumentation system, along with instructions, warnings and flight operations and maintenance manuals, for the Aircraft and its component parts which it approved, wrote, prepared, provided, monitored and sold, delivered, and provided to defendants Colgan, Pinnacle and Continental, and thereafter each of those defendants monitored the Aircraft for maintenance, mechanical reliability and airworthiness and undertook to, and did, service and maintain the aircraft to provide for its mechanical reliability and airworthiness.

27.     Defendants, and their parents, subsidiaries, affiliates, associates, and partners, at all relevant times, were the agent, servant, employee, assignee, successor in interest, or a joint venturer of each other, and were acting within the time, purpose or scope of such agency or employment, and all acts or omissions alleged herein of each defendant were authorized, adopted, approved, or ratified by each of the other defendants.

- 7 -

28.     At all times mentioned, defendants were fully informed of the actions of their agents and employees, and thereafter no officer, director, or managing agent of defendants repudiated those actions, which failure to repudiate constituted ratification, adoption and approval of each of those actions.

29.     The defendants' actions described in this Complaint were wanton and reckless and demonstrated conscious indifference and utter disregard of their effects upon the health and safety of others.

30.     Darren Tolsma in no way contributed to or caused the crash of the Aircraft, or his injuries or death.

31.     As a direct and proximate result of defendants' conduct, Darren Tolsma died and his beneficiaries, heirs and survivors have incurred funeral, burial, travel, and related expenditures.

32.     As a direct and proximate result of defendants' conduct, Darren Tolsma died, and his heirs, beneficiaries and survivors, including without limitation, his wife, Robin, and children, Darren, Jr. and Nikki, have been damaged and will continue to be deprived of his future services, companionship, guidance, increased inheritance, and support, and have sustained and will continue to sustain other economic and pecuniary losses, as well as other compensable damages under applicable law.

- 8 -

## COUNT I
### (Negligence: Colgan, Pinnacle, Continental)

33.     Repeats and realleges the allegations in paragraphs 1 through 32 as if fully set forth herein.

34.     Defendants Colgan, Pinnacle and Continental, as owners and operators of airlines of common carriage and, in particular, Flight 3407, had a duty to passengers — including Darren Tolsma — to exercise the highest standard of care and to provide safe transport to all passengers of Flight 3407.

35.     Notwithstanding these duties, defendants Colgan, Pinnacle and Continental breached their duties of reasonable care in the following ways:

        a.     their pilots negligently failed to use standard, reasonably prudent and acceptable piloting techniques and skills to conduct Flight 3407;

        b.     they negligently hired, supervised, contracted, retained and/or trained the pilots of Flight 3407;

        c.     they negligently failed to warn passengers of Flight 3407 of the damages resulting from their failure to provide pilots capable, trained and able to conduct Flight 3407 in the conditions in which they and the pilots chose to conduct the flight, and their failure to provide an aircraft that was safe for those conditions;

        d.     they negligently operated, maintained, controlled, inspected, serviced, repaired, loaded, dispatched, scheduled, and monitored Flight 3407 and the Aircraft utilized on that flight;

        e.     they negligently leased and/or purchased the Aircraft for the purpose for which it was operated as Flight 3407 on February 12, 2009; and

        f.     they negligently dispatched, operated and flew Flight 3407 into conditions known to be conducive to icing, knowing that the Aircraft was inadequately equipped with ineffective de-icing equipment, and negligently trained the flight crew to safely fly the Aircraft in such conditions.

- 9 -

36.    As a result of this negligence, Flight 3407 crashed, killing Darren Tolsma, and directly and proximately resulted in damages to Plaintiff, to the Estate, and to Darren Tolsma's heirs, beneficiaries, wife and children, as well as causing pre-impact terror, injuries and death to Darren Tolsma.

## COUNT II
### (Strict Liability: Bombardier)

37.    Repeats and realleges the allegations in paragraphs 1 through 36 as if fully set forth herein.

38.    During Flight 3407, the Aircraft was used for its intended or reasonably foreseeable purpose.

39.    The Aircraft and its component parts, systems, manuals, instructions, and warnings were defective and unreasonably dangerous by reason of defective design, manufacture, and/or marketing and the failure of Bombardier to give adequate and proper warnings of the dangers existing, and adequate instructions regarding the avoidance of such dangers. The defective and unreasonably dangerous condition of the Aircraft exposed Darren Tolsma and the public in general to unreasonable risk of harm and were a proximate and producing cause of Plaintiff's injuries and damages. The unreasonably dangerous conditions/defects include, among other things, the de-icing system, the pilot's operating manual, the flight control systems, maintenance manuals and procedures, and the absence of adequate warnings and instructions regarding the dangers.

40.    At the time the Aircraft and its de-icing system, maintenance procedures, and other component parts were sold and/or marketed and/or placed into the stream of commerce

- 10 -

by Bombardier, such products were defective and unreasonably dangerous to persons, including

Darren Tolsma, who could reasonably be expected to use or benefit from them, and which

defective and unreasonably dangerous conditions were a direct and proximate cause of Plaintiff's

damages.  The Aircraft was also defective by reason of Bombardier's failure to include or place

with it adequate or proper warnings and instructions as to dangers associated with the design and

foreseeable maintenance and use of the products and how to avoid such dangers, and which

defects rendered the Aircraft unreasonably dangerous and a direct and proximate cause of

Plaintiff's injuries and damages.

41.     The Aircraft, and its operating procedures, and maintenance manuals, and

the warnings issued by Bombardier were defective in that they were so likely to be harmful that a

reasonable person who had actual knowledge of their potential for producing injury or death

would conclude that they should not have been marketed in that condition.

42.     The defective products and inadequate warnings sold and/or marketed, and

provided by Bombardier were a substantial factor in causing plaintiff's damages, and Darren

Tolsma's injuries and death.  Accordingly, Bombardier is strictly liable for plaintiff's damages

and for Darren Tolsma's injuries and death.

### COUNT III
### (Negligence: Bombardier)

43.     Repeats and realleges the allegations in paragraphs 1 through 42 as if fully

set forth herein.

44.     Bombardier negligently manufactured, tested, and marketed the Aircraft and its component parts, systems, manuals, instructions, and warnings.  Bombardier's negligence was a proximately cause of the loss of control and crash of Flight 3407.

45.     Bombardier knew, or in the exercise of ordinary care should have known, that the Aircraft and its component parts, systems, manuals, instructions, and warnings were defective and unreasonably dangerous to those persons likely to use the products for the purposes and in the manner for which they were intended to be used and for the purposes reasonably foreseeable to Bombardier, including the purpose for which the Aircraft was used on February 12, 2009.  Bombardier's negligence was a proximate cause of the crash of Flight 3407 and of Plaintiff's injuries and damages.

46.     Bombardier knew, or in the exercise of ordinary care, should have known, how to design, test and equip the Aircraft, manuals, its de-icing flight control systems, so that the type of incident and resulting injuries and death described in this Complaint would have been prevented.  Bombardier had actual knowledge of the means of designing and testing an aircraft, manuals and flight control systems, such that they would not be inadequate or unreasonably dangerous.  Bombardier was negligent for the additional reason that it failed to give adequate or proper warnings or instructions to ordinary users of the Aircraft, including Colgan, Pinnacle and Continental, and Darren Tolsma, and failed to recall or timely recall the products or make appropriate post-marketing efforts to prevent incidents such as the crash of Flight 3407.

47.     Bombardier owed Darren Tolsma the duty of reasonable care in designing, manufacturing, testing and marketing the products described in the preceding paragraph. Bombardier violated its duties and was negligent, including those acts of omission or

- 12 -

commission previous described. Bombardier's negligent acts, jointly and/or severally, were a proximate cause of the crash, the injury to and death of Darren Tolsma, and the injuries and damages sustained by Plaintiff.

48.     The defective conditions and resulting crash of the Aircraft were proximately caused by the negligent acts and omissions of Bombardier in the design, manufacture, assembly, construction, testing, instruction, certification, marketing, monitoring, and sale of the Aircraft, and by its failure to warn of and to take appropriate remedial action with respect to a known dangerously defective condition.

### COUNT IV
### (Breach of Express and Implied Warranty: Bombardier)

49.     Repeats and realleges the allegations in paragraphs 1 through 48 as if fully set forth herein.

50.     Bombardier is an aerospace manufacturer that holds itself out to the public as having superior knowledge, skill and experience in the design, construction, assembly, manufacture, testing, maintenance and preparation of flight and maintenance manuals, and inspection of transport category aircraft and their components, and in the course of business as an aerospace manufacturer, Bombardier designed, constructed, assembled, manufactured, inspected, tested, published flight operations and maintenance manuals, and caused the Dash 8-Q400 model transport category aircraft to be certified, including the Aircraft, which Bombardier expressly and impliedly warranted was fit for its intended purposes and use as a vehicle in commercial air transportation, being airworthy and free of unreasonably dangerous defects, and, further,

- 13 -

Bombardier marketed, sold, distributed, and caused the Aircraft to be introduced into the scheme of commerce by sale or lease to Pinnacle, Colgan and/or Continental.

51.     Bombardier expressly and impliedly warranted to the public generally, and to Darren Tolsma specifically, that the products in question were fit for the purposes for which they were intended.

52.     Darren Tolsma made use of the Aircraft in the intended manner, as a fare-paying passenger, and relied on the express and implied warranties.

53.     Contrary to the warranties, the products were not fit for their intended and foreseeable uses, thereby rendering the products in question unreasonably dangerous.

54.     Bombardier breached its express and implied warranties because of the products' failure and defective components as alleged herein, and because of the improper marketing involving Bombardier's failure to warn of the products' inadequacies or defects, and failure to instruct in the safe operation and maintenance of the Aircraft.

55.     Bombardier's breach of warranties and the defects referenced above rendered the products unreasonably dangerous and a proximate and producing cause of the crash of Flight 3407, and the resulting injuries and damages suffered by Plaintiff and Darren Tolsma. Bombardier's conduct and omissions were, upon information and belief, knowing and intentional.

56.     The crash of Flight 3407 and Darren Tolsma's death was proximately caused and/or substantially contributed to by Bombardier's breach of express and implied

- 14 -

warranties of the Aircraft's fitness for use and Bombardier's breach of its representations that the
Dash 8 Q400 model aircraft and, in particular, the Aircraft, were free of unreasonably dangerous
defects in design and/or manufacture.

57.     As a member of the traveling public, Darren Tolsma relied to his
detriment upon Bombardier's express and implied representations of safety and fitness for the
use to which the Aircraft was put on February 12, 2009.

58.     As a direct and proximate result of the breach of these warranties, the
Aircraft was caused to, and did, crash, causing the injuries, death, and damages complained of in
this Complaint.

**WHEREFORE**, Plaintiff demands judgment, jointly and severally as follows:

1.     Compensatory damages for wrongful death for the pecuniary losses
suffered and to be suffered by Robin, Darren, Jr. and Nikki Tolsma, in an amount greatly
exceeding $75,000, exclusive of interest and costs (N.Y. E.P.T.L. §5-4.3);

2.     Compensatory damages for the injuries and losses sustained by Darren
Tolsma before he died (N.Y. E.P.T.L. §11-3.3);

3.     Funeral expenses, including any burial plot (N.Y. E.P.T.L. §5-4.3);

4.     Damages arising from Darren Tolsma's pre-impact physical pain and
suffering, mental terror, and mental anguish (N.Y. E.P.T.L. §11-3.3);

5.     Punitive damages in an amount to be fixed by the jury;

- 15 -

      6.     Interest from February 12, 2009 upon the principal sum recovered by

Plaintinff (N.Y. E.P.T.L. §5-4.3);

      7.     Costs and disbursements; and

      8.     Such other and further relief as the Court deems proper.

      A TRIAL BY JURY OF ALL ISSUES IS REQUESTED.

Dated:  March 24, 2009

**HODGSON RUSS** LLP
*Attorneys for Plaintiff*

By: _____
     Hugh M. Russ III
     Paul I. Perlman
Buffalo, New York 14202-4040
Telephone:   716-848-1479
140 Pearl Street, Suite 100
Facsimile:   1716-819-4616
*hruss@hodgsonruss.com*
*pperlman@hodgsonruss.com*

- 16 -